UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DONNA MARIE WELCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:17 CV 2002 ACL |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Deputy Commissioner of Operations, ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM**

Plaintiff Donna Marie Welch brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite Welch's severe impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform other work that exists in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be reversed and remanded for further proceedings.

## I. Procedural History

Welch filed her applications for DIB and SSI on August 13, 2014, claiming that she became unable to work on March 17, 2014, because of degenerative disc disease, lupus, migraines, and rheumatoid arthritis. (Tr. 72-73, 83-84, 208.) Welch was 46 years of age at the time of her alleged onset of disability. Her claims were denied initially. (Tr. 72-95, 101-05.) Following an administrative hearing, Welch's claims were denied in a written opinion by an ALJ, dated June 1, 2016. (Tr. 17-32.) Welch then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on May 18, 2017. (Tr. 1-5.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Welch first argues that the ALJ's RFC finding "was the product of legal error and was unsupported by substantial evidence." (Doc. 14 at p. 5.) She next argues that the ALJ erred "by finding that Plaintiff's lupus did not meet listing 14.02." *Id.* at 10. Welch contends that the ALJ erred by "not properly assessing Plaintiff's depression." *Id.* at 11. She further argues that the ALJ "failed to fully and fairly develop the administrative record when he relied upon the bare medical evidence in formulating the RFC after dismissing the only treating opinion in the record." *Id.* at 13. Finally, Welch argues that the ALJ "failed to consider Plaintiff's obesity as required by SSR 02-01p." *Id.* at 14.

## II. The ALJ's Determination

The ALJ first found that Welch met the insured status requirements of the Social Security Act through December 31, 2019. (Tr. 22.) He found that Welch did not engage in substantial gainful activity since her alleged onset date of March 17, 2014. *Id.*

In addition, the ALJ concluded that Welch had the following severe impairments: degenerative disc disease and systemic lupus erythematosus[1] ("SLE" or "lupus"). *Id.* The ALJ found that Welch did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. *Id.*

As to Welch's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she can occasionally climb ramps and stairs, but never ladders, ropes or scaffolds. She can occasionally balance, stoop, kneel and crouch, but never crawl. She must avoid exposure to extreme cold and extreme heat and pulmonary irritants, such as dusts, fumes, odors, and poorly ventilated areas. She must avoid operational control of moving machinery and work at unprotected heights and around hazardous machinery. She is limited to simple, routine and repetitive tasks.

(Tr. 24.)

In determining Welch's RFC, the ALJ assigned "little evidentiary weight" to the opinions of treating rheumatologist David S. Rosenberg, M.D. (Tr. 39.)

The ALJ further found that Welch was unable to perform any past relevant work, but was capable of performing other jobs existing in significant numbers in the national economy, such as order and beverage clerk and surveillance systems monitor. (Tr. 30-31.) The ALJ therefore concluded that Welch was not under a disability, as defined in the Social Security Act. (Tr. 32.)

---

[1] Systemic lupus erythematosus ("SLE") is an inflammatory connective tissue disease with variable features, frequently including weakness, fatigue, joint pains or arthritis resembling rheumatoid arthritis, skin lesions, anemia, and positive LE cell test result. *Stedman's Medical Dictionary,* 1124 (28th Ed.2006).

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on August 13, 2014, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income protectively filed on August 13, 2014, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

*Id.*

## III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.*, 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

**III.B. Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than

twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine

work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §

416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## IV. Discussion

Welch first challenges the ALJ's RFC finding. She argues that the ALJ improperly weighed the opinion of treating rheumatologist Dr. Rosenberg, and substituted his own judgment to formulate Welch's RFC.

An ALJ determines a claimant's RFC "based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own

description of h[er] limitations." *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). The ALJ "may not simply draw his own inferences about plaintiff's functional ability from medical reports;" instead, the RFC assessment should include a narrative discussion demonstrating how the evidence logically supports the ALJ's conclusions. *Strongson*, 361 F.3d at 1070. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *See Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008) (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)).

The ALJ first summarized Welch's testimony regarding her limitations. He noted Welch testified that she last worked in August 2014, and she has not driven in two years because her medications make her drowsy. (Tr. 25, 44.) Welch stated that she experiences constant pain, with spasms every hour and a half; pain in her lower back that shoots down her legs; a rash on her scalp that burns and is painful; difficulty concentrating; difficulty sleeping at night; and depression. (Tr. 25, 45-49). Welch testified that she cannot stand or sit long periods, has to move around to get comfortable, uses a pushcart to lean on when standing, cannot lift a gallon of milk, requires help getting dressed, and does not leave her home. (Tr. 25, 45-50, 58.) Welch stated that she lives with her mother, and a home health aide comes to her home every day to prepare meals and help her shower. (Tr. 25, 43, 47-49, 58.) The aide, her boyfriend, and her family do the shopping and household chores. (Tr. 25, 50, 52.) She does not have good or bad days, only a good "moment" occasionally. (Tr. 25, 57.)

The ALJ next discussed the medical records. He acknowledged that treatment notes of Barbara Caciolo, M.D. and Michael Spezia, D.O., dated March 2013 and February 2014

respectively, reflect diagnoses of SLE, back pain, and rheumatoid arthritis. (Tr. 25, 275-78, 296-97). Welch was taking Hydrocodone[2] for her pain at that time. Dr. Spezia referred her to a rheumatologist on February 5, 2014. (Tr. 25, 275).

Welch established care with Dr. Rosenberg of North County Medicine and Rheumatology on February 17, 2014. (Tr. 26, 301.) Welch complained of lower back pain that shoots down to her bilateral legs, fatigue, a rash on her scalp, and Raynaud's syndrome.[3] (Tr. 301.) Upon examination, Dr. Rosenberg noted that Welch was obese, had tenderness in her lower back, and lumbar spasm. (Tr. 303.) He diagnosed her with SLE and lumbar radiculopathy. *Id.* Dr. Rosenberg prescribed Norco[4] and recommended additional testing. (Tr. 304.) Welch returned for follow-up on March 17, 2014, at which time she reported moderate to severe headaches occurring daily, and lower back pain she rated as a 10 out of 10. (Tr. 311.) Welch had gone to the ER earlier in the week for evaluation due to pain. *Id.* Dr. Rosenberg's assessment was chronic pain; SLE; and lumbar radiculopathy. (Tr. 314.) He stated that Welch's chronic pain and SLE were poorly controlled; and added Percocet.[5] *Id.* Dr. Rosenberg authored a letter for Welch's employer, indicating Welch should be off work due to a lupus flare beginning March 17, 2014. (Tr. 319, 325.) Welch presented for follow-up on April 8, 2014, at

---

[2] Hydrocodone contains a combination of an opioid (narcotic) pain reliever—hydrocodone—and a non-opioid pain reliever—acetaminophen. *See* WebMD, http://www.webmd.com/drugs (last visited August 6, 2018).

[3] A bluish discoloration of the digits due to arterial and arteriolar contraction. *See Stedman's* at 1911.

[4] Norco is a combination of opioid and non-opioid pain reliever indicated for the treatment of moderate to severe pain. *See* WebMD, http://www.webmd.com/drugs (last visited August 6, 2018).

[5] Percocet is a combination of opioid and non-opioid pain reliever indicated for the treatment of moderate to severe pain. *See* WebMD, http://www.webmd.com/drugs (last visited August 6, 2018).

which time she reported difficulty breathing when walking, lower back pain, bilateral knee pain, bilateral feet and ankle swelling, fatigue, headache, and bilateral upper and lower extremity joint pain. (Tr. 325.) She had not worked since March 17th and was unable to work due to her back pain and SLE. (Tr. 328.) Dr. Rosenberg noted that Welch "want[ed] to discuss if her condition is not good for useful employment." (Tr. 325.)

Welch saw Stephen G. Smith, M.D., on May 1, 2014, upon the referral of Dr. Rosenberg for pain management. (Tr. 640.) Welch complained of increasing low back and leg pain. *Id.* She used a walker. *Id.* Upon examination, Welch walked with a slow gait, had somewhat decreased range of motion in the neck and shoulders, knees, and low back. (Tr. 640-41.) Dr. Smith diagnosed Welch with lumbar radiculopathy and lumbar spinal stenosis. *Id.* He recommended stretching exercises, physical therapy, and a possible discogram. *Id.*

On May 5, 2014, Dr. Rosenberg's diagnosis was poorly controlled lumbar radiculopathy; and SLE stable, medications helping. (Tr. 339.) He prescribed Oxycodone.[6] *Id.* On June 24, 2014, Welch complained of neck spasms, lower back pain, migraines, and bilateral hand pain. (Tr. 348.) Dr. Rosenberg noted Welch was "very depressed" on examination, and that she was "nearly completely bald" from SLE. (Tr. 349.) He diagnosed her with poorly controlled chronic pain, SLE, and lumbar radiculopathy. (Tr. 351.) On July 22, 2014, Welch complained of lower back pain that radiated to her neck. (Tr. 363.) Dr. Rosenberg noted tenderness in the lower back on examination. (Tr. 365.) His assessment was poorly controlled lower back pain and chronic pain; and stable SLE. *Id.* Dr. Rosenberg prescribed a Fentanyl[7] patch. *Id.* On August 19, 2014,

---

[6]Oxycodone is an opioid analgesic indicated for the treatment of moderate to severe pain. *See* WebMD, http://www.webmd.com/drugs (last visited August 6, 2018).

[7]Fentanyl is an opioid analgesic indicated for the treatment of severe pain. *See* WebMD,

Welch reported that she was doing better with her low back pain when she was off work for four months. (Tr. 373.) Her employer requested a physical upon her return back to work on August 8, 2014. *Id.* Following her physical, she complained of severe low back pain, "and needs constant assistance with simple task[s] and ADLs." *Id.* Dr. Rosenberg stated that Welch had an "acute flare up" and her employer accepted her resignation. (Tr. 374.) Dr. Rosenberg noted multiple tender areas in her arms and legs on examination. (Tr. 375.) Dr. Rosenberg diagnosed Welch with "poorly controlled chronic pain and SLE," noted Welch "can't work anymore," and referred her to an attorney. (Tr. 376.)

Dr. Rosenberg completed a "Medical Source Document-Physical Capacity" on September 29, 2014. (Tr. 411.) He listed Welch's diagnoses as lupus, chronic lumbar radiculopathy, and chronic pain. *Id.* Dr. Welch found that Welch could sit, stand and walk less than two hours in an eight-hour workday; lift a total of less than five pounds no more than occasionally; and could not bend, twist, reach above her head, pull, or crawl. *Id.* He expressed the opinion that Welch's medical problems would allow her to work "0" hours per day, her experience of pain or other symptoms would interfere with her attention and concentration constantly, and that she would likely be absent more than three times a month. *Id.*

Dr. Rosenberg saw Welch approximately month from September 2014 through March 2016. Welch continued to complain of chronic pain, along with depression, sleep disturbance, and headaches. (Tr. 522-639, 682-869.) Dr. Rosenberg's assessment of Welch's condition remained that she had poorly controlled SLE, chronic pain, and lumbar radiculopathy. He continued to note tenderness in the back, with muscle spasm. On February 15, 2015, Dr.

---

http://www.webmd.com/drugs (last visited August 6, 2018).

Rosenberg stated that Welch had been able to "function daily well with her narcotic analgesics," and noted there were "no signs of drug intolerance, over sedation, or abuse." (Tr. 569.) On July 6, 2016, Dr. Rosenberg noted that Welch was "very depressed," and that her son had been shot and killed. (Tr. 716.) He added an antidepressant to Welch's prescription regimen. (Tr. 718.) On September 30, 2015, Dr. Rosenberg noted that Welch had lost fifty pounds since her son died four months earlier. (Tr. 761.)

The ALJ discussed Dr. Rosenberg's opinion that Welch's lupus and lumbar radiculopathy restricted her ability to pursue gainful employment. He stated that "the findings of limitations and opinions by Dr. Rosenberg within this assessment are inconsistent with the findings within the record as a whole, including those within Dr. Rosenberg's own treatment records." (Tr. 30.) The ALJ explained that Welch's gait was normal, and there were no findings of edema, cyanosis, clubbing, atrophy, decreased muscle strength, sensation loss, or other neurological deficits noted. *Id.* He stated that Welch's medications were not frequently changed and she only attended pain management services one time and physical therapy twice. *Id.* The ALJ indicated he was therefore assigning "little evidentiary weight to the findings of limitations or opinions by Dr. Rosenberg within the medical source assessment." *Id.*

"'It is the ALJ's function to resolve conflicts among the various treating and examining physicians." *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted)). The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Prosch v. Apfel,* 201 F.3d 1010, 1012-13 (8th Cir. 2000).

The record, though, should be "evaluated as a whole." *Id.* at 1013 (quoting *Bentley v. Shalala*, 52 F.3d 784, 785-86 (8th Cir. 1995)). The ALJ is not required to rely on one doctor's opinion entirely or choose between the opinions. *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011). Whether the ALJ grants the treating physician's opinion substantial or little weight, "[t]he regulations require that the ALJ 'always give good reasons' for the weight afforded to a treating physician's evaluation." *Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005). "Failure to provide good reasons for discrediting a treating physician's opinion is a ground for remand." *Anderson v. Barnhart*, 312 F. Supp.2d 1187, 1194 (E.D. Mo. 2004).

The undersigned finds that the ALJ erred in discrediting Dr. Rosenberg's opinions. The ALJ found that Dr. Rosenberg's opinions were inconsistent with his own treatment notes. Dr. Rosenberg's treatment notes, however, reveal that Dr. Rosenberg repeatedly found that Welch's lupus and back pain were uncontrolled. His notes further reflect that Welch attempted to return to work, but was found incapable of working due to a lupus flare. Dr. Rosenberg routinely noted neck and back tenderness and back spasm on examination, consistent with Welch's pain complaints. He also documented other lupus symptoms, including morning stiffness, rash, Raynaud's syndrome, and hair loss. Welch's diagnosis of lupus was also confirmed by blood tests. (Tr. 282, 284, 308, 384, 385.)

Dr. Rosenberg's opinions are also consistent with the other medical evidence of record. Welch saw pain management physician Dr. Smith in May 2014, upon Dr. Rosenberg's referral. (Tr. 640-41.) Dr. Smith observed that Welch used a walker, and noted a slow gait, and decreased range of motion in the neck, shoulders, knees, and low back on examination. *Id.* An MRI of the lumbar spine Welch underwent in April 2014 revealed degenerative changes and neural

foraminal stenosis at L4-L5 and L5-S1.  (Tr. 391-92)  Physical therapy notes from May 2015 reveal decreased range of motion.  (Tr. 433)  Welch also saw Terri C. Coble, M.D., for various complaints from March 2015 through November 2015.  (Tr. 422-47.)  In May 2015, Dr. Coble noted lower back spasms up to the neck.  (Tr. 429.)

Specifically, the ALJ cited the lack of the following findings as justification for discrediting Dr. Rosenberg's opinions: edema, cyanosis, clubbing, atrophy, decreased muscle strength, sensation loss, or other neurological findings.  As previously discussed, the record contains laboratory, imaging, and examination findings supporting limitations from Welch's lupus and musculoskeletal impairment.  The absence of findings cited by the ALJ does not detract from Welch's claim of a disabling combination of lupus and back pain.  Similarly, the fact that Welch's medications have not been changed is in no way inconsistent with Dr. Rosenberg's opinions.

The ALJ failed to provide "good reasons" for assigning little weight to Dr. Rosenberg's opinions.  Dr. Rosenberg, a rheumatologist, is a specialist in the treatment of lupus.  He treated Welch on a regular basis from February 2014 through the ALJ's decision.  As such, Dr. Rosenberg's opinion was entitled to controlling weight as long as it was adequately supported.  In this case, Dr. Rosenberg's opinions were supported by his treatment notes reflecting uncontrolled pain and symptoms despite treatment with narcotic analgesics.  There is no contrary medical evidence in the record.

The ALJ did not cite to any evidence in determining Welch's RFC.  Dr. Rosenberg was the only examining physician to offer an opinion regarding Welch's work limitations.  As Welch points out, state agency physician Kenneth R. Smith, M.D., completed a Physical Residual

Functional Capacity form on October 17, 2014. (Tr. 79-80.) Dr. Smith expressed the opinion that Welch could occasionally lift or carry ten pounds and frequently lift or carry less than ten pounds; stand or walk four hours in an eight-hour workday; sit a total of more than six hours in an eight-hour workday; and occasionally climb, balance, stoop, kneel, crouch, and crawl. *Id.* The ALJ did not discuss Dr. Smith's opinion or indicate the weight he was assigning to the opinion. The RFC formulated by the ALJ is similar, albeit slightly more restrictive, to Dr. Smith's opinion.

When determining a plaintiff's RFC, an ALJ must consider "all relevant evidence," but ultimately, the determination of the plaintiff's RFC is a medical question. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). The RFC formulated by the ALJ is not supported by substantial evidence. As previously discussed, the ALJ erred in assigning little weight to the opinions of treating rheumatologist Dr. Rosenberg. The ALJ then failed to provide a rationale for the RFC he formulated. In light of the medical evidence and testimony, including Welch's testimony that she relies on the assistance of an aide for personal care and household tasks on a daily basis, it cannot be said that the ALJ's RFC determination is supported by substantial evidence.

"Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press h[er] case." *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) (quoting *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004)). The ALJ is required to consider all evidence in the record and obtain additional information if a crucial issue is underdeveloped. *See Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) (a social security hearing is non-adversarial proceeding, and ALJ has duty to develop record fully; duty may include seeking clarification from treating physicians if a crucial issue is undeveloped

or underdeveloped); *Conklin v. Astrue*, 360 Fed.Appx. 704, 707 (8th Cir. 2010) (further development of the record was warranted where "the ALJ was arguably on notice of the need to clarify [the claimant's] mental RFC with her treating psychiatrists.").

In this case, to the extent that the record lacked sufficient evidence, the ALJ should have further developed the record by either requesting clarification from Dr. Rosenberg or obtaining a consultative examination. Instead, the ALJ improperly relied upon on his own inferences about Welch's limitations.

For the reasons discussed above, the ALJ's RFC determination is not based upon substantial evidence on the record as a whole and this matter will be reversed and remanded. Because this issue is dispositive, the Court does not reach Welch's additional arguments regarding Listing 14.02, her depression, or her obesity. Upon remand, the ALJ shall properly consider the opinion evidence; obtain additional medical evidence regarding Welch's limitations if necessary; consider whether Welch's condition meets or equals the requirements of Listing 14.02; and formulate a new RFC based on the record as a whole.

                /s/ Abbie Crites-Leoni
                ABBIE CRITES-LEONI
                UNITED STATES MAGISTRATE JUDGE

Dated this 12th day of September, 2018.